**Keith Lashone HOGANS, Appellant**

v.

**The STATE of Texas.**

**No. PD–1932–04.**

Court of Criminal Appeals of Texas.

Nov. 9, 2005.

Robert A. Morrow, Spring, for Appellant.

Eric Kugler, Asst. District Atty., Houston, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HERVEY and HOLCOMB, JJ., joined.

In this case we hold that a court of appeals has jurisdiction to consider the merits of a claim that temporally arises before the act of adjudication if the claim

directly and distinctly relates to punishment rather than to the decision to adjudicate.[1] However, because appellant raised a claim of ineffective assistance of counsel that relates to the decision to adjudicate, it was properly dismissed on jurisdictional grounds by the court of appeals.[2]

## I.

Appellant was originally charged with the felony offense of aggravated assault after he pulled a gun on a driver he had rear-ended. He entered a no contest plea to the charge. The trial court deferred adjudication of guilt and placed him on community supervision for seven years.

Five years later, appellant was involved in a pair of auto accidents with Cordell Roberts. The State filed a motion to adjudicate based on three alleged violations of his community supervision conditions: assault of Cordell Roberts; failure to report to his community supervision officer; and failure to pay supervision fees. The State offered evidence on all three counts, but most of the evidence presented at the adjudication hearing related to the assault.

At the adjudication hearing, Cordell Roberts testified that appellant rear-ended his car as Mr. Roberts, with two female friends, pulled out of a Jack-in-the-Box restaurant. When appellant got out of his car, came up to Mr. Roberts and threatened to kill him, Mr. Roberts drove off in fear. Appellant followed him and rear-ended him again, this time "on purpose." Appellant again approached Mr. Roberts and again threatened him, screaming, "I'm going to whip your ass." Appellant reached inside Mr. Roberts's car and removed the keys from the car's ignition. Appellant then pulled Mr. Roberts out of his car, threw him against the car, and punched him in the jaw.

Appellant also testified at the adjudication hearing. He said that he had just picked up his two children at school when Mr. Roberts pulled out of a parking lot, hit appellant's car, and then fled the scene. Appellant followed him to get his license plate number. When Roberts made a sudden U-turn, appellant tried to avoid hitting him but his car's brakes locked. Appellant testified that after this second collision, he walked up and reached into Roberts's car to grab his keys to prevent Roberts from fleeing again. Appellant said that Roberts followed him as appellant walked back to his own car. Roberts tried to grab his keys back, but when appellant resisted, Roberts punched him in the head. Appellant then hit back in self-defense.

Other defense witnesses testified that appellant did not appear angry after the car wreck, that he was worried about his kids in his car, and that he had asked that the police be called.

Defense counsel also called appellant's children (ten-year-old Jerron and eight-year-old Kieara) to testify during the adjudication hearing. Both children testified that appellant punched Roberts, but that Roberts never hit appellant.[3]

1. We granted appellant's sole ground for review:

    The court of appeals erred in holding that appellant could not appeal his conviction, when the error claimed affected the punishment assessed, as well as the trial court's decision to adjudicate guilt.

2. *Hogans v. State*, No. 14–03–00897–CR, 2004 WL 2251162, 2004 Tex.App. LEXIS 8927 (Tex.App.-Houston [14th Dist.] 2004).

3. Jerron testified that his dad "turned around and then hit the boy.... The boy didn't hit my dad." Kieara testified that, after the second wreck, "my dad had got out and took the keys out of the man's car, and the man had got out and my dad had punched him and they ran down the street. And my dad came back to check on me and Jerron." Kieara said she did not see the man "do anything" to her dad.

At the end of the adjudication hearing, the trial judge found "not true" on the failure to pay allegation, and "true" on the failure to report and assault allegations. In adjudicating appellant on the original aggravated assault charge, the trial judge said that he found the assault allegation to be the more important violation, in part because appellant "put his own children in high risk." After adjudicating appellant's guilt, the trial judge began the sentencing hearing.

During the sentencing hearing, Raynard Fontenot testified about the original "road rage" incident for which appellant had been placed on deferred adjudication. Mr. Fontenot testified that the traffic was bumper-to-bumper on Richmond Avenue in Houston when appellant ran into him at a very slow speed. Mr. Fontenot got out of his car to see what the damage was. Appellant also got out of his car, with his hand behind his back. When Mr. Fontenot asked appellant what he had in his hand, appellant pulled out a gun, walked toward Mr. Fontenot, and put the gun to his neck. The two exchanged a few words, and then, when a police officer walked up, appellant fled.

The state closed its punishment case, and the defense put on three witnesses who all testified that they thought appel-

lant was still a good candidate for regular probation.

Appellant appealed his conviction on the ground that he received ineffective assistance of counsel during the adjudication hearing when his attorney called his children to testify—an error which he alleged also affected his rights in the punishment phase. The court of appeals dismissed the appeal for lack of jurisdiction, stating, in part, that "[a]n appeal may only be taken from the proceedings occurring after the adjudication of guilt, such as assessment of punishment." [4]

## II.

Under Article 42.12, Section 5(b) of the Code of Criminal Procedure, if the defendant violates a condition of deferred-adjudication community supervision, he is entitled to a hearing "limited to the determination by the court of whether it proceeds with an adjudication of guilty on the original charge. No appeal may be taken from this determination." [5] The Texas Legislature has decreed that the courts of appeals do not have jurisdiction to consider claims relating to the trial court's determination to proceed with an adjudication of guilt on the original charge.[6] Thus, if an appeal raises a claim of purported error in the adjudication of guilt determination, a court of appeals should dismiss that claim without reaching the merits.[7]

---

**4.** *Hogans v. State,* 2004 WL 2251162, at *1, 2004 Tex.App. LEXIS 8927 at *2.

**5.** Tex.Code Crim. Proc art. 42.12, § 5(b).

**6.** *Wright v. State,* 592 S.W.2d 604, 606 (Tex. Crim.App.1980) ("under the terms of the [deferred adjudication] statute, no appeal may be taken from the hearing in which the trial court determines to proceed with an adjudication of guilt on the original charge"). The Legislature's prohibition includes all complaints related to the trial court's decision to proceed to an adjudication of guilt, except for those challenging the trial court's jurisdiction. *See, e.g., Nix v. State,* 65 S.W.3d 664, 667–68

(Tex.Crim.App.2001) (recognizing applicability of "void judgment" exception to the deferred adjudication proceedings).

**7.** *Connolly v. State,* 983 S.W.2d 738, 741 (Tex. Crim.App.1999); *Phynes v. State,* 828 S.W.2d 1, 2 (Tex.Crim.App.1992) (stating that "as there is nothing in the Texas Constitution which guarantees the right to appeal a criminal conviction, that right is only as provided by the legislature. It naturally follows that when a legislative enactment says an accused may not appeal a determination to adjudicate, there is no right to do so").

However, that same statute continues: "After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred."[8] In *Issa v. State*[9] we held that when "a trial court finds that an accused has committed a violation as alleged by the State and adjudicates a previously deferred finding of guilt, the court must then conduct a second phase to determine punishment."[10]

■ Thus, the defendant is entitled to a punishment hearing after the adjudication of guilt, and the trial judge "must allow the accused the opportunity to present evidence" in mitigation of punishment.[11] In later cases, however, we decided that this requirement is satisfied as long as the defendant has an opportunity to present evidence in mitigation of guilt, either before or after adjudication.[12] For example, we stated in *Pearson v. State*, "It is immaterial that the opportunity to present evidence came before the actual words of adjudication."[13]

■ Thus, "although an appellant cannot appeal the trial court's decision to adjudicate guilt, an appellant sentenced under a guilty plea agreement can appeal aspects of the 'second phase to determine punishment.' "[14] Consequently, while a defendant may not raise on direct appeal a claim of ineffective assistance (or even an absence) of counsel that allegedly occurred at the proceeding to adjudicate guilt,[15] he may raise on direct appeal a claim of ineffective assistance that allegedly occurred at the punishment proceeding.[16]

The question remains: when mitigation or other punishment evidence is presented before adjudication, is it still "second phase" evidence that may be the subject of an appeal? The State argues that the answer is no—nothing that occurs before adjudication can be appealed because of the Section 5(b) rule that prohibits an appeal from a trial court's determination to adjudicate guilt on the original charge. Appellant, on the other hand, argues that "anything that contributes to punishment must be reviewed, even if it happened during the adjudication hearing."

■ Both of these positions are too extreme. As good advocates, both the State and the defense seek a touchdown, but the

8. TEX.CODE CRIM. PROC. art. 42.12, § 5(b).

9. 826 S.W.2d 159 (Tex.Crim.App.1992).

10. *Id.* at 161.

11. *Id.*

12. *Pearson v. State*, 994 S.W.2d 176, 179 (Tex.Crim.App.1999); *Hardeman v. State*, 1 S.W.3d 689, 690–91 (Tex.Crim.App.1999) ("*Issa* does not stand for the absolute right to a separate punishment hearing. Instead, it requires the defendant to have the opportunity to present evidence in mitigation of guilt if not afforded during adjudication.").

13. *Pearson*, 994 S.W.2d at 179.

14. *Kirtley v. State*, 56 S.W.3d 48, 51 (Tex.Crim.App.2001).

15. *Phynes v. State*, 828 S.W.2d at 2. Certain constitutional claims may, of course, be raised in a post-conviction petition for writ of habeas corpus. *See id.* ("even if appellant's right to counsel was violated, he may not use *direct appeal* as the vehicle which to seek redress") (emphasis added); *Olowosuko v. State*, 826 S.W.2d 940, 942 n. 2. (Tex.Crim.App.1992) (Overstreet, J., concurring) (noting that defendant's complaint concerning the voluntariness of his plea of "true" was, in reality, a challenge to the trial court's decision to proceed with an adjudication of guilt on the original charge, and his remedy, if any, is by way of post-conviction writ of habeas corpus); *Tillman v. State*, 919 S.W.2d 836, 838 (Tex.App.-Fort Worth 1996, pet. ref'd).

16. *Kirtley*, 56 S.W.3d at 51.

law lies on the fifty-yard line. As to the State's position: if a defendant is not absolutely entitled to a separate sentencing hearing from which he may appeal punishment issues, then his right to appeal should not be thwarted by rolling the adjudication and sentencing hearings into one, thereby denying him an appeal of all aspects of the punishment evidence or procedures. At least in the context of combined adjudication-sentencing hearings, evidence and procedures that relate directly and distinctly to the sentence imposed are cognizable on direct appeal even when the events themselves occur before the magic words, "I find you guilty."

■ On the other hand, appellant's position proves too much; all evidence or procedures "contribute" to punishment, at least in the sense that, but for the decision to adjudicate, there would be no punishment to assess.[17] The fact that a defendant may appeal sentencing claims that temporally occur during adjudication "proceedings" does not give an appellate court jurisdiction to consider any issue framed as a punishment issue.[18] Rather, the asserted error must directly and distinctly concern the second phase; the claim must, on its face, relate to the sentence imposed, not to the decision to adjudicate. Any other rule would eviscerate the Section 5(b) bar on direct appeals of the decision to adjudicate. Appellant's proposed rule— that any error occurring during the adjudication hearing which can be shown to have affected punishment is cognizable—does just that.

## III.

■ In appellant's case, the adjudication and punishment hearings were separate, and the allegation of ineffectiveness was rooted in counsel's actions at the adjudication hearing. Appellant claims that his trial counsel's act of calling his children to testify was constitutionally deficient assistance because the children contradicted appellant's version of events. Appellant argues that the "ineffectiveness extended to the punishment the court assessed, which was demonstrated by the fact that the court referred to the defense's own evidence just before sentencing appellant to imprisonment, when he was eligible for community supervision." In sentencing appellant, the court stated,

Well, besides your technical alleged violations and the one I found, which is not significant enough to revoke or adjudicate, I would not have done it on the technical reporting; but you come in here on a case from May the 7th, 2003,

---

**17.** For example, one might plausibly argue that "but for" Officer Obie's illegal search of the probationer, the rock of cocaine would never have been found. And if the rock of cocaine were never found, no motion to adjudicate would have been filed and no decision to adjudicate would have been made, so obviously no sentence would have been imposed. In that sense, the purportedly illegal search "contributes" to the defendant's sentence.

**18.** *See Butler v. State*, 135 S.W.3d 866, 868 (Tex.App.-Houston [1st Dist.] 2004, no pet.). The court explained,

"Although framed as challenges to post-adjudication rulings, *i.e.*, challenges to the trial court's denial of his motions for new trial and its evidentiary ruling admitting the prosecutor's affidavit, the substance of appellant's first, second, and third issues are in fact impermissible challenges to the trial court's decision to proceed to adjudication of appellant's guilt. In support of these issues, appellant argues that his pleas were involuntary because he was not taking the proper bipolar medication at the time of the adjudication proceeding. That appellant's first, second, and third issues constitute a challenge to the trial court's decision to proceed to adjudication becomes apparent when read in the context of the record in this case."
*Id.*

where you do have your two minor children in the car, Kieara and [Jerron]. You have a minor fender bender. And I'm not concerned about whose fault it was; but the way you reacted. You took out after the guy, and by your own testimony, and Defense Exhibit 1 and 2, it was a major collision. It appears that was a rear-end collision. It wasn't a tap. The real truth is you went after the guy with the kids in the car and endangered their lives and hit the Complainant, Mr. Roberts. Which not only did you endanger your children, you endangered Mr. Roberts, his passengers.

Then after doing that, that didn't stop you. You go out and take the law into your own hands and you go and retrieve the car keys of this man, which is a pretty dangerous act. That man, if it had been another person, maybe had a gun or something, there may have been a dead body out there. I don't know where you're coming from. I don't quite understand it. You are now, I consider, a danger to society. What's going to happen next time you go out and have a minor fender bender? I don't know what happens to you, but the next time it might result in a death. And one of the responsibilities of the Court is to protect society from defendants. It's not only looking out for your welfare and what we're going to do to rehabilitate you at some point, we have to look at protecting society. And to keep you on probation so you can go out and have another temper tantrum when you have another fender bender and something else triggers you and you pull a gun and assault somebody, it may be more dangerous than this Court, and me personally, would be very responsible for.

I'm not going to assess your punishment at 20 years, but I'm going to assess your punishment at five years in the Institutional Division of the Texas Department of Criminal Justice.

The trial judge's statement does indeed show that he based his punishment decision on the evidence of the more recent "road rage" incident that formed the basis of the motion to adjudicate. But that same statement shows that the judge also based his adjudication decision on the evidence of the more recent "road rage" incident. In this case the appellate claim—ineffective assistance in calling appellant's children as witnesses during the adjudication hearing—does not directly and distinctly affect only the "second phase."[19] Surely, all evidence offered during an adjudication hearing will "affect" or "impact" punishment. This "spill over" effect is natural, appropriate, and encouraged in our law.[20] The fact that evidence may be probative to both the decision to adjudicate and to the assessment of an appropriate punishment does not convert adjudication evidence into punishment evidence.[21]

---

**19.** Of course, had appellant's counsel called his two children to testify to their eyewitness account of the "road rage" incident during the punishment phase, then the elicitation of that same evidence could have formed the basis of an ineffective assistance of counsel claim on direct appeal.

**20.** *See* Tex.Code Crim. Proc. art. 37.071 § 2(d)(1) ("in deliberating on the issues submitted under Subsection (b) of this article, the jury shall consider all evidence admitted at the guilt or innocence stage and the punish-

ment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty").

**21.** *Compare Pearson v. State,* 994 S.W.2d at 179. In that case, prior to adjudication, Pearson was sworn and testified in response to questions from his attorney as to "anything you would like to address the Court on regarding the sentencing." *Id.* If Pearson had raised an ineffective assistance of counsel

Here, the court of appeals correctly dismissed appellant's appeal, not because the purported error temporally occurred during the adjudication hearing, but because the purported error directly affected the decision to adjudicate. Its effect upon the trial court's sentencing decision was simply part of the natural "spill over" effect of all evidence that shows the circumstances under which an offense occurred. That evidence is offered to prove criminal liability even though it may also be highly probative in determining an appropriate sentence.

Therefore, we affirm the court of appeals's dismissal of appellant's claim.

JOHNSON, J., filed a concurring opinion.

KELLER, P.J., filed a dissenting opinion.

MEYERS, J., filed a dissenting opinion.

JOHNSON, J., filed a concurring opinion.

I concur in the judgment of the Court. However, I believe that we have consistently misapplied the procedural statute in question, TEX.CODE CRIM. PROC., Art. 42.12, § 5(b).

The plain language of the statute states that no appeal may be taken from the *determination* by the trial court "whether it proceeds with an adjudication of guilt on the original charge." The plain language does *not* bar appeal of issues that arose during the proceedings that terminated with a "determination" to proceed to an adjudication of guilt. We must use the plain language of the statute in our interpretation unless the plain language produces an absurd result that the legislature could not have intended. *Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991). Cases such as *Wright v. State,* 592 S.W.2d 604 (Tex.Crim.App.1980), and *Shields v. State,* 608 S.W.2d 924 (Tex.Crim.App. 1980), improperly expanded the inability to appeal from the plain language "determination" to include "hearing," "process," and "proceeding" and thus violated the teachings of *Boykin.*

Any interpretation that bars *all* appeals of *any* issues that arise before the magic words, "I find you guilty," are said, opens the door to abuse. At some point, the inability to appeal procedural issues becomes a constitutional issue. What if the defendant is denied counsel[1] or the state presents no evidence of a violation of any condition, but the trial court still adjudicates? What if the defendant is denied an opportunity to present evidence to rebut the evidence of the state or prevented from cross-examining state witnesses?[2] What if the defendant is jailed for no other reason than that he refused to plead true to the allegations? At some point, the inability to appeal raises the specter of "unconstitutional as applied." When rights guaranteed by the United States Constitution or the Texas Constitution are abrogated through state law, state law must give way.

If, in a given case, the conduct of the adjudication hearing violated a defendant's right to counsel, due process, confrontation, equal protection,[3] or any other consti-

claim related to this exchange, although it arose before adjudication, the issue would have been cognizable. The purported error, had it been raised, would have been clearly, distinctly, and directly related to punishment, not to the decision to adjudicate.

1. *Phynes v. State,* 828 S.W.2d 1 (Tex.Crim. App.1992).

2. *Ramon v. State,* 159 S.W.3d 927 (Tex.Crim. App.2004).

3. *Olowosuko v. State,* 826 S.W.2d 940, 942–43 (Tex.Crim.App.1992) (Overstreet, J., concurring).

tutional right, the defendant must have some means of challenging the denial of those constitutional rights. To hold that Art. 42.12, § 5(b), bars *all* challenges, whatever their nature, to proceedings that result in adjudication elevates form over substance and produces a truly absurd result—that state procedural law overrules the United States Constitution.

While such extreme abuse is not common, it does occur. *See, e.g., Phynes, infra.* No such abuse occurred here. No constitutional violations are presented. I therefore concur in the judgment.

KELLER, P.J., filed a dissenting opinion.

I would hold that the scope of appellate jurisdiction after adjudication depends upon the relief sought: appellate courts do not have jurisdiction over claims that seek to overturn the trial court's adjudication of guilt, but do have jurisdiction over claims that seek a new punishment hearing. This rule upholds the plain language of the statute and is easy to apply.

### A. Prior Caselaw

Article 42.12, § 5(b) provides:
On violation of a condition of community supervision imposed under Subsection (a) of this section, the defendant may be arrested and detained as provided in Section 21 of this article. The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of

guilt on the original charge. No appeal may be taken from this determination. After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred.[1]

Caselaw has often been imprecise in its phrasing of the prohibition against appeal but has always reached results consistent with the "relief sought" rule. The issue was first addressed in *Williams v. State,* where the defendant challenged the trial court's adjudication determination by claiming that there was insufficient evidence to support it.[2] This Court held that "the statute clearly provides that the trial court's *decision* to proceed with an adjudication of guilt is one of absolute discretion and not reviewable by this Court."[3] Faced with another sufficiency of the evidence challenge in *Wright v. State,*[4] the Court cited *Williams* for the proposition that "no appeal may be taken from the *hearing* in which the trial court determines to proceed with an adjudication of guilt on the original charge."[5] The Court gave no explanation for the different wording used to phrase the rule originally expressed in *Williams.* Subsequent cases cited both *Williams* and *Wright* in holdings or *dicta* to variously say that the defendant could not appeal the adjudication "determination," "decision," "hearing," or "proceedings."[6] What was known for sure from

1. Tex.Code Crim. Proc., Art. 42.12, § 5(b).

2. 592 S.W.2d 931, 932 (Tex.Crim.App.1979).

3. *Id.* at 932–933 (emphasis added).

4. 592 S.W.2d 604, 605 (Tex.Crim.App.1980).

5. *Id.* (emphasis added).

6. *Shields v. State,* 608 S.W.2d 924, 925 (Tex.Crim.App.1980)(*dicta:* "proceedings");

*McDougal v. State,* 610 S.W.2d 509, 509 (Tex.Crim.App.1981)(*dicta:* "decision"); *Daniels,* 615 S.W.2d 771, 771 (Tex.Crim.App.1981)(sufficiency of the evidence claim: "hearing"); *Contreras v. State,* 645 S.W.2d 298, 298 (Tex.Crim.App.1983)(refusing petition for discretionary review with summary statement that court of appeals did not have jurisdiction over the appeal, grounds for appeal not revealed in the opinion); *Rus-*

the holdings in these cases was that the defendant could not challenge on appeal the rationale for the trial court's determination. But the wording of these opinions certainly suggested a broader prohibition of appeal.

*Phynes v. State*[7] appears to be the first case in which this Court clearly addressed a challenge to a trial court's adjudication decision based, not upon a dispute with the trial court's rationale for adjudication, but upon alleged errors in the adjudication proceedings. In that case, the defendant complained that the trial court conducted the adjudication hearing while defense counsel was absent.[8] In holding that the deferred adjudication statute deprived appellate courts of jurisdiction to address the defendant's complaint, we said:

> [A]s there is nothing in the Texas Constitution which guarantees the right to appeal a criminal conviction, that right is only as provided by the legislature. It naturally follows that when a legislative enactment says an accused may not appeal a determination to adjudicate, there is no right to do so. Therefore, even if appellant's right to counsel was violated, he may not use direct appeal as the vehicle which to seek redress.[9]

But we noted that the defendant had claimed no error "with respect to the punishment portion of the trial court's judgment or the proceedings after the adjudication."[10] So, while *Phynes* barred consideration of an error that occurred during the adjudication hearing, it did so in the context of an appellate claim seeking to overturn the adjudication itself. The opinion did not purport to address an error occurring in those proceedings but impacting punishment, for which a new punishment hearing was sought, as no such error was alleged. Moreover, the Court's use of the phrase "punishment portion of the trial court's judgment" to identify the issue not before it, instead of the phrase "punishment hearing" or "punishment proceedings," suggests that the Court anticipated that appealable punishment error might include more than just those errors occurring at the punishment stage of the case.

In *Connolly v. State,* the Court addressed a defendant's claim that the State failed to exercise due diligence in bringing the defendant to adjudication.[11] After discussing *Williams, Wright, Phynes,* and *Olowosuko,*[12] the Court stated: "In all these cases, we have tried to make clear that, given the plain meaning of Article 42.12, § 5(b), an appellant whose deferred adjudication probation has been revoked and who has been adjudicated guilty of the original charge, may not raise on appeal *contentions of error in the adjudication of guilt process.*"[13] Viewed in isolation in its broadest possible meaning—that no errors occurring during the adjudication phase of the process are appealable—this statement finds support in the text of only one of the

---

sell v. State, 702 S.W.2d 617, 618 (Tex.Crim. App.1985)(grounds concerning revocation of probation and entry of adjudication of guilt: "hearing"); *Ex parte Hernandez,* 705 S.W.2d 700, 702 (Tex.Crim.App.1986)(*dicta:* "determination"); *Olowosuko v. State,* 826 S.W.2d 940, 941–942 (Tex.Crim.App.1992)(contending that conditions of probation were vague and unenforceable, or were not violated: "determination," "decision").

7.  828 S.W.2d 1 (Tex.Crim.App.1992).

8.  *Id.* at 1.

9.  *Id.* at 2.

10.  *Id.* at 1 n. 1.

11.  983 S.W.2d 738, 740 (Tex.Crim.App.1999).

12.  *Connolly,* 983 S.W.2d at 740–741.

13.  *Id.* at 741 (emphasis added).

four opinions discussed (*Wright*) and is not required by the results arrived at in any of this Court's prior cases. On the other hand, if the italicized phrase is understood to really mean "contentions of error in the adjudication of guilt process on the basis of which the defendant seeks relief from the adjudication determination," *Connolly's* statement would be more in line with the opinions it discussed. And the defendant's claim in *Connolly* was consistent with claims made in prior cases in that the relief sought was the overturning of the trial court's adjudication decision.

The final case of importance is *Kirtley v. State*, where the Court made clear that errors occurring at punishment were not covered by the statutory prohibition against appealing the trial court's adjudication determination.[14] The defendant contended that he was entitled to a new punishment hearing because the court reporter's record of the original punishment hearing was destroyed.[15] The Court decided that *Phynes* was "not controlling because the defendant there was attempting to appeal a denial of counsel *at the proceeding adjudicating guilt*" and said that it had "specifically noted that the defendant made no complaint as to the 'punishment portion of the trial court's judgment or the proceedings after the adjudication.'"[16] While one might construe the italicized language as a manifestation of belief that appealability turns upon the nature of the proceeding in which the error occurs, one might also read the language as simply emphasizing that the er-

ror in *Phynes* related to the adjudication of guilt, rather than to punishment.

It is by way of these cases that the Court has now arrived at the question before us. Given the inexact language in the cases, it is not surprising that we are now considering barring appeal of any and all issues that do not arise strictly from the punishment phase of the proceedings. It is time to return to the language of the statute.

## B. The Statutory Language

Under *Boykin v. State*, we interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning would lead to absurd results that the Legislature could not have possibly intended.[17] Here the statutory language is straightforward: it says that no appeal may be taken from the "determination." It does not say that no appeal may be taken from the adjudication "hearing." The plain import of the statutory wording is that a trial court's decision to adjudicate guilt is immune from appellate review. Nothing in the language of the statute prohibits the defendant from complaining on appeal that his punishment was improperly assessed because of something improper occurring during the adjudication hearing.

There is another context in which we already classify errors that occur before the punishment proceedings as punishment errors: capital cases. Under Article 44.29(c), "error affecting punishment only" in a death penalty case results in a new punishment hearing, rather than an entire new trial.[18] In *Ransom v. State*, this

14. 56 S.W.3d 48 (Tex.Crim.App.2001).

15. *Id.* at 50.

16. *Id.* at 51 (emphasis in original).

17. 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

18. Tex.Code Crim. Proc., Art. 44.29(c)("If any court sets aside or invalidates the sentence of a defendant convicted of an offense under Section 19.03, Penal Code, and sentenced to death on the basis of any error affecting punishment only, the court shall not set the conviction aside but rather shall commence a new punishment hearing ...")

Court held that voir dire error, which obviously did not occur at the punishment stage, was nevertheless "error affecting punishment only" where the error involved a challenge for cause on the basis that the juror could not follow the law with regard to the future dangerousness special issue.[19] By contrast, in non-capital cases, where the relevant statute calls for a new punishment hearing for those errors "made in the punishment stage of trial,"[20] the Court determined that, in a trial on both guilt and punishment, voir dire error relating to a punishment issue required reversal of the conviction and a new trial of the entire case because the error did not occur at the punishment stage, as specified by the statute.[21] The Legislature knows how to attach appellate consequences to events occurring during a specific stage of trial. It could easily have said that no appeal would lie from errors occurring during the adjudication hearing. Instead, it chose the more narrow prohibition against appealing the adjudication determination.

Moreover, a broad "hearing" appealability rule undercuts the right of appeal that is recognized in the deferred adjudication statute. As set out above, § 5(b) guarantees that, after adjudication, the defendant's appeal will take place as if adjudication had never been deferred. This generally means that the defendant gets to appeal the imposition of punishment. But the reality is that most evidence relevant to punishment is also relevant to the trial court's decision to adjudicate guilt, and therefore will be admissible at the adjudication hearing. A "hearing" rule allows for anomalous results depending upon when the State decides to introduce a particular piece of aggravating evidence.

The State's decision to introduce particular evidence at the adjudication hearing could result in depriving the defendant of punishment issues that would have been appealable had adjudication not been deferred, contrary to the "as if the adjudication of guilt had not been deferred" language of the statute.

The Court's hybrid "directly and distinctly relates to punishment" approach is better than a straight "hearing" rule, but because so much evidence that is relevant to punishment is also relevant to the adjudication determination, very few things will satisfy the distinctness requirement. As with the "hearing" rule, the hybrid rule will cause appealability to turn upon when the State happened to introduce certain aggravating evidence.

The hybrid rule also turns the straightforward sentence, "No appeal may be taken from this determination," into a complex inquiry into whether a particular claim, despite its presentation at the adjudication phase, distinctly relates to punishment. The Court says that the proper resolution of the case "lies on the fifty-yard line," but in my opinion, and with all due respect, this is not a fifty-yard-line statutory provision. This is the type of statutory provision that suggests application of a bright-line rule. And the "relief sought" approach is a bright-line rule that is easy to apply.

The Court further contends that a rule without the distinctness requirement would "eviscerate the § 5(b) bar on direct appeals of the decision to adjudicate." It is true that a "relief sought" rule would permit appeal of many more issues than

19. 920 S.W.2d 288, 297–298 (Tex.Crim.App.1994)(opinion on rehearing), cert. denied, 519 U.S. 1030, 117 S.Ct. 587, 136 L.Ed.2d 516 (1996).

20. Art. 44.29(b).

21. Carson v. State, 6 S.W.3d 536 (Tex.Crim. App.1999).

would the hybrid rule, but the statute already contemplates the possibility of an appeal of punishment issues in *any* case in which guilt is adjudicated. And more to the point, I think the "relief sought" rule gives effect to the narrow language of the § 5(b) bar. The bar is not against appealing certain issues. It is against appealing a certain disposition.

### C. Conclusion

Loose language in an opinion can take on a life of its own. The touchstone of statutory interpretation must always be the statute itself, and language found in a prior opinion must be evaluated in light of the statute and the fact situation presented in the case. The trial court's "determination" is what the statute says cannot be appealed, and prior cases barring appeal have all dealt with attempts to invoke appeal to undo a trial court's adjudication determination.

I conclude that appealability under § 5(b) turns upon the relief sought. Claims that seek to overturn the adjudication determination are not appealable, but claims that seek a new punishment hearing are.

In the case before us, part of applicant's ineffective assistance claim alleged that the children's testimony impacted the trial court's assessment of punishment, and as a result entitled applicant to a new punishment hearing. To the extent it made such an allegation, the claim sought relief in the form of a new punishment hearing and was appealable.

I respectfully dissent.

MEYERS, J., filed a dissenting opinion.

Even though the ineffective assistance of counsel claim related to events occurring at the adjudication hearing, I would hold that the court of appeals has jurisdiction to determine the appellant's claim since the error affected punishment. Therefore, I respectfully dissent.