In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00250-CR


______________________________




TERRY RICHARD QUAM, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 15,749-98




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 When he was twenty-three years old, Terry Richard Quam had sexual relations with a girl
who was sixteen, resulting in the birth of a child. In 1999, in a proceeding arising from those events,
Quam pled guilty to sexual assault of a child and was placed on deferred adjudication. On July 21,
2006, the State filed a "First Amended Motion to Proceed to Final Adjudication." Although the State
had previously issued a capias warrant in connection with a prior motion to proceed to adjudication,
the State did not issue one based on the amended motion. At the hearing on the motion to proceed
to adjudication, Quam pled true to some allegations and untrue to others. The trial court found
several allegations true, adjudicated Quam guilty, and sentenced Quam to ten years' confinement. 
In his sole issue on appeal, Quam argues the trial court lacked jurisdiction to revoke his deferred
adjudication community supervision and to adjudicate him guilty, because the State failed to issue
a second capias warrant, that is, one based on the amended motion to proceed to adjudication.

 The Texas Legislature has expressly stated that a defendant may not appeal a trial court's
decision to proceed to an adjudication of guilt. See Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b)
(Vernon 2006); Connolly v. State, 983 S.W.2d 738, 741 (Tex. Crim. App. 1999); Cooper v. State,
2 S.W.3d 500, 502 (Tex. App.--Texarkana 1999, pet. ref'd). "With regard to deferred adjudication,
the Legislature authorized appeal of only two types of orders: (1) an order granting deferred
adjudication, and (2) an order imposing punishment pursuant to an adjudication of guilt." Davis v.
State, 195 S.W.3d 708, 712 (Tex. Crim. App. 2006). The Legislature's prohibition includes all
complaints attaching to the trial court's decision to proceed to an adjudication of guilt, except for
issues related to proceedings following the adjudication decision. See, e.g., id.; Fluellen v. State, 71
S.W.3d 870, 872 (Tex. App.--Texarkana 2002, pet. ref'd) (defendant whose guilt was adjudicated
may appeal issues relating to sentencing).

 Quam argues that the trial court lacked jurisdiction to proceed to adjudication. At one time,
the Texas Court of Criminal Appeals recognized a "void judgment" exception to prohibition of the
deferred adjudication proceedings. See Nix v. State, 65 S.W.3d 664, 667-68 (Tex. Crim. App.
2001). Now, that court recognizes no jurisdictional exception to the prohibition against appealing
the determination to adjudicate guilt. Davis, 195 S.W.3d at 712. "To the extent that a 'void
judgment' claim might be possible under Nix, it would be only as an attack on the original plea
proceedings imposing deferred adjudication, not on a trial court's jurisdiction to adjudicate based
upon subsequent events." Id. "A jurisdictional attack on the trial court's determination is still an
attack on that determination, and it may not be advanced on appeal." Id. If an appeal raises a claim
of purported error in the adjudication of guilt determination, a court of appeals should dismiss that
claim without reaching the merits. Hogans v. State, 176 S.W.3d 829, 832 (Tex. Crim. App. 2005). 
Quam's sole point of error claims error in adjudicating his guilt. Thus, that claim must be dismissed.




 We affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 29, 2007

Date Decided: May 30, 2007


Do Not Publish





 is entitled to judgment as a matter of law; (2) in deciding whether there is a
disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will
be taken as true; and (3) every reasonable inference and any doubts must be resolved in the
nonmovant's favor. Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002). 
Further, when the order granting summary judgment fails to specify the reason for granting the
motion, an appellant must show that each individual ground for summary judgment raised in the
motion would be insufficient to support summary judgment. FM Props. Operating Co. v. City of
Austin, 22 S.W.3d 868, 872 (Tex. 2000). On the other hand, summary judgment must be affirmed
if any of the grounds raised in the motion are meritorious. Id. We conclude all three grounds were
meritorious.

 Zanfardino contends Tom Jeffus defrauded the Antones out of the property and, furthermore,
as trustee under the deed of trust, owed a fiduciary duty to the Antones. Zanfardino also contends
Tom Jeffus was guilty of self-dealing because he took both the Red River and Lamar County tracts
personally, instead of in his representative capacity for Deport.

 To establish a fact question on her fraud claim, Zanfardino must have presented some
competent summary judgment evidence of each of the following elements of fraud: (1) that Tom
Jeffus made a material, false representation, (2) that he knew was false or that he made recklessly
as a positive assertion without any knowledge of its truth, (3) intending to induce the Antones to act
on the representation, and (4) on which the Antones actually and justifiably relied, thereby suffering
injury. See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). We
have carefully examined the summary judgment evidence and find no evidence to raise a fact
question as to any of those elements of a fraud cause of action. Therefore, there is no evidence to
support Zanfardino's fraud claim. (4)

 In Zanfardino's "Affidavit of Fact" offered to resist Appellee's motion for summary judgment,
she offered various statements which might be argued were evidence of fraud. In each case,
however, her statements were conclusory, speculative, hearsay, or simply not evidence of any
element of a fraud claim.

 Zanfardino claims Tom Jeffus fraudulently procured the property by taking more land than
was necessary to pay the debt owed to Deport. Specifically, Zanfardino claims Tom Jeffus
misrepresented the value of the land secured by the deed of trust and convinced the Antones to deed
both tracts in exchange for his assumption of their debts. First, the only language in the summary
judgment evidence suggesting that the sale of the Red River County tract would have been sufficient
to satisfy the outstanding balance owed to Deport was the following statement made by Zanfardino
in her affidavit: 

 On May 7, 1955, my Grandfather and Mother drove from Dallas to [Deport] to pay
their three notes in full. They met with the President of the Bank and Trustee, Tom
Jeffus. When the Antones left their apartment in Dallas that morning, they did not
believe they would have to deed all of their land to the Bank. They believed that the
land in Red River County and the herd of cattle covered by the Chattel mortgage
would satisfy the balance at the Bank. 


Zanfardino's statement is both hearsay and conclusory, and it is insufficient to raise a genuine issue
of material fact. See Tex. R. Evid. 801; Life Ins. Co. v. Gar-Dal, Inc., 570 S.W.2d 378 (Tex. 1978);
Gracey v. West, 422 S.W.2d 913, 916 (Tex. 1968).

 There is no evidence in the record that Tom Jeffus ever made any representations to the
Antones concerning the value of the two tracts. The only proposal found in the record was that Tom
Jeffus agreed to assume the Antones' debts to Banker's and Deport in exchange for the Lamar and
Red River County tracts. An agreement to assume a debt is a prospective promise to perform, not
a misrepresentation of fact that could support a fraud claim unless accompanied by proof that, at the
time of the promise, the promisor intended not to perform. Cent. Sav. & Loan Ass'n v. Stemmons
Northwest Bank, N.A., 848 S.W.2d 232, 240 (Tex. App.-Dallas 1992, no pet.). There is no such
evidence in this record.

 In support of her contention that Tom Jeffus' position as trustee under the deed of trust
created a confidential relationship between him and the Antones, Zanfardino relies on First Fed. Sav.
& Loan Ass'n v. Sharp, 359 S.W.2d 902, 904 (Tex. 1962). Zanfardino's reliance on Sharp, however,
is misplaced. The Sharp decision merely stands for the proposition that a trustee in the deed of trust
forecloses thereunder as the special agent for both the mortgagor and the mortgagee, and has a duty
to conduct any foreclosure sale in a fair and impartial manner and in accordance with the terms of
the trust instrument. In the present case, Tom Jeffus was never asked to foreclose on the land in
question, nor did a foreclosure ever take place. Further, since the Sharp decision, courts have
consistently held that the trustee in a deed of trust does not owe a fiduciary duty to the mortgagor.
Stephenson v. LeBoeuf, 16 S.W.3d 829, 837 (Tex. App.-Houston [14th Dist.] 2000, pet. denied);
First State Bank v. Keilman, 851 S.W.2d 914, 925 (Tex. App.-Austin 1993, writ denied); see also
Castillo v. First City Bancorporation of Tex., 43 F.3d 953, 960 (5th Cir. 1994) (applying Texas law);
FDIC v. Myers, 955 F.2d 348, 350 (5th Cir. 1992) (applying Texas law). Accordingly, Tom Jeffus
did not owe a fiduciary duty to the Antones by virtue of his office as trustee in the deed of trust. (5)

 There is no evidence Tom Jeffus fraudulently induced the Antones to deed the two tracts to
him. We overrule Zanfardino's point of error and affirm the judgment of the trial court.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 16, 2003

Date Decided: July 31, 2003
1. Tom Jeffus was also president of Deport at the time this deed of trust was executed. 
2. In the record is a check in that amount apparently written by John Antone, but Zanfardino's
affidavit concludes that it must have represented proceeds from the sale.
3. By 1999, the Antones were both deceased. 
4. Even if there had been evidence of fraud, we believe the trial court's summary judgment was
proper on the basis of the statute of limitations and of adverse possession. The documentation found
by Zanfardino and other information recounted in her affidavit was information of which the
Antones were actually aware or on notice.

 A four-year limitations period applies to a fraud cause of action. Tex. Civ. Prac. & Rem.
Code Ann. § 16.004(a)(4) (Vernon 2002). Fraud, however, prevents the running of the statute of
limitations until it is discovered or, by exercise of reasonable diligence, it might have been
discovered. Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 531 (Tex. 1997). Parties have
actual knowledge if they have personal knowledge of the terms in the deed. City of Houston v. Muse,
788 S.W.2d 419, 422 (Tex. App.-Houston [1st Dist.] 1990, no writ). Even if, before signing the
deed, the Antones believed they would be asked to convey all or only part of the property to Deport,
they had actual notice when they signed the deed in 1955 that Tom Jeffus was taking title to all of
the property in his individual capacity. See Mooney v. Harlin, 622 S.W.2d 83, 85 (Tex. 1981).

 Under the Texas Civil Practice and Remedies Code, adverse possession is defined as "actual
and visible appropriation of real property, commenced and continued under a claim of right that is
inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem. Code Ann.
§ 16.021 (Vernon 2002). The only issue in dispute is when limitations began to run. When a deed
reserves a vendor's lien, possession of the vendee is not adverse to the superior title of the vendor,
and the statute of limitations for adverse possession does not begin to run until the vendor's lien is
released, or the vendee gives the vendor unequivocal notice of repudiation of the vendor's superior
title. Calverly v. Gunstream, 497 S.W.2d 110, 115 (Tex. Civ. App.-Dallas 1973, writ ref'd n.r.e.). 
In 1955, Deport issued a release of its lien on the two tracts and declared its note paid. In 1962,
Prudential released its lien and declared its note paid. We conclude the statute of limitations for
adverse possession began to run in 1962, when the Antones no longer had a valid vendor's lien, and
any Zanfardino claim to title of the land would have been barred by adverse possession regardless
of whether the twenty-five-year or ten-year statute of limitations is applied.
5. Zanfardino also relies on Section 113.053 for the proposition that trustees may not purchase
trust property for themselves. See Tex. Prop. Code Ann. § 113.053 (Vernon 1995). That portion
of the Code, however, expressly provides that it does not apply to "a security instrument such as a
deed of trust . . . ." Tex. Prop. Code Ann. § 111.003 (Vernon 1995).