NO. 07-06-0282-CR


 07-06-0283-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 15, 2007


______________________________



ROY BULLOCK, JR., APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 123RD DISTRICT COURT OF SHELBY COUNTY;



NO. 05CR-16434, 05CR-16435; HONORABLE GUY GRIFFIN, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Appellant, Roy Bullock, Jr., appeals from the trial court's determination to proceed
with adjudication of two charges of indecency with a child and assessment of 10 and 18
year sentences of confinement in the Institutional Division of the Texas Department of
Criminal Justice. We affirm.



Background

 On July 11, 2005, appellant was indicted by separate indictments for the offenses
of indecency with a child by exposure and indecency with a child by contact. On October
28, 2005, in accordance with a plea agreement, the trial court deferred adjudication on
both charges for a period of 10 years. No appeal was taken from the order deferring
adjudication. On December 9, 2005, the State filed a Motion to Proceed with an
Adjudication of Guilt alleging three violations of the terms and conditions of appellant's
community supervision. On March 10, 2006, the trial court heard the matters and
adjudicated appellant guilty of both charges. Subsequently, the trial court held a hearing
on punishment and sentenced appellant to 10 years confinement for the offense of
indecency with a child by exposure and 18 years confinement for the offense of indecency
with a child by contact. Each sentence is to run concurrently. 

 Appellant presents the following four issues: (1) did appellant violate the terms of
his probation merely by attending church, (2) was the evidence legally sufficient to support
appellant's convictions, (3) were the terms of appellant's probation so overbroad and not
narrowly tailored as to violate appellant's constitutional rights, and (4) was appellant's
sentence so excessive as to constitute cruel and unusual punishment. Because we lack
jurisdiction to address appellant's first three issues, we will discuss them together.

Appellant's First Three Issues

 Appellant's first two issues challenge the trial court's determination to proceed to
adjudication. However, article 42.12, section 5(b), of the Texas Code of Criminal
Procedure provides that a defendant may not appeal from a trial court's determination to
proceed with an adjudication of guilt. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b)
(Vernon Supp. 2005); (1) Hogans v. State, 176 S.W.3d 829, 832 (Tex.Crim.App. 2005). Our
authority to review issues relating to the revocation of deferred adjudication probation is
limited to post-adjudication proceedings, including the assessment of punishment. § 5(b). 
Thus, consideration of appellant's first two issues is foreclosed by statute. As we lack
jurisdiction to address these issues, nothing is presented for our review.

 Appellant's third issue challenges the terms and conditions of the order initially
placing him on deferred adjudication community supervision. Appellant contends that, if
he violated the terms and conditions of his community supervision by attending church,
then the terms and conditions of his community supervision were overly broad and not
sufficiently tailored. To the extent that appellant's third issue would require us to review
the basis for the trial court's determination to proceed to adjudication, we are without
authority to do so. See § 5(b); Hogans, 176 S.W.3d at 832. In the alternative, to the
extent that appellant's third issue challenges the terms and conditions of his community
supervision, appeal of issues relating to the original deferred adjudication proceeding must
be appealed when the deferred adjudication is imposed. See Vidaurri v. State, 49 S.W.3d
880, 884-85 (Tex.Crim.App. 2001). Because appellant did not appeal the terms and
conditions of his community supervision at the time that they were imposed, our jurisdiction
to address the merits of appellant's third issue has not been invoked. See White v. State,
61 S.W.3d 424, 428 (Tex.Crim.App. 2001).

Cruel and Unusual Punishment

 While we do not have authority to review a trial court's decision to proceed with an
adjudication of guilt, we do have authority to review post-adjudication proceedings,
including the assessment of punishment. § 5(b). Appellant contends that, in the present
case, the punishment assessed by the trial court was so excessive as to constitute cruel
and unusual punishment. Appellant was sentenced to 18 years incarceration for the
second degree felony of indecency with a child by contact and 10 years for the third degree
felony of indecency with a child by exposure. The applicable ranges of punishment for
these offenses are two to 20 years and two to 10 years, respectively. Tex. Penal Code
Ann. §§ 12.33, 12.34 (Vernon 2003). Thus, neither sentence exceeds the punishment
range set by statute. Such punishment is not unconstitutionally cruel and unusual. See
Nichols v. State, 494 S.W.2d 830, 836 (Tex.Crim.App. 1973); Hill v. State, 493 S.W.2d
847, 849 (Tex.Crim.App. 1973). Thus, we overrule appellant's fourth issue.

Conclusion

 We dismiss appellant's first three issues for want of jurisdiction. We overrule
appellant's fourth issue and affirm the judgment of the trial court.


 Mackey K. Hancock

 Justice 
1. Further references to article 42.12 of the Texas Code of Criminal Procedure will
be by reference to "section __" or "§ __."



EIC's own proof established that its
policyholder furnished the major equipment used by the workers, gave work instructions
directly to the workers, and "asserted the right to prevent the workers themselves (as
opposed to preventing the Fund's policyholder) from discharging their work duties." 

 Because the Fund's first two issues are so closely related, we will consider them
together. In addition to answering the Fund's petition, as noted, PEIC filed a plea to the
jurisdiction of the trial court over Walters's claims, together with a motion to transfer venue
to Jefferson County, which was Walters's residence insofar as those claims were
concerned. Although PEIC sought summary judgment on two bases, i.e., that Walters's
portion of the suit was filed in the wrong county, and there was no issue of material fact
that Elliott, not Entergy, was the employer of Walters and Byrd at the time of their injuries, 
the record reveals that on May 30, 2001, the trial court granted two separate and distinct
judgments. In one, the trial court expressly overruled PEIC's plea to the jurisdiction and
the motion to transfer the cause. In the other, it granted PEIC's motion for summary
judgment. In that state of the record, then, the trial court simply did not grant PEIC's
jurisdictional challenge. Thus, because the jurisdictional challenge was specifically,
explicitly, and separately overruled, the summary judgment must have been granted on the
remaining prong of its motion, namely, that the evidence was sufficient to show that the
employees were not borrowed servants of Entergy, but remained employees of Elliott at
the time of their injuries. Appellant's first two issues are overruled.

 As we have noted, in its third issue, the Fund argues that in its summary judgment
motion, PEIC stressed that "a contract between TWCIF and Pacific specifically states that
these employees [i.e., Walters and Byrd] will remain employees of Elliott," and the
"contract [between TWCIF and Pacific] specifically states that control will remain with
Elliott." However, it argues, no such contract between those parties was ever received into
evidence, and because there was no such contract admitted, the trial court erred in its
judgment. From an examination of the motion over its 11-page length, it is apparent that
this initial reference was inadvertent and the numerous other references show the alleged
contract was between Elliott, the Fund's insured, and Entergy, PEIC's insured. Moreover,
this particular challenge was not raised at the trial level. As this court held in Rayl v.
Borger Economic Develop. Corp., 963 S.W.2d 109, 113 (Tex.App.--Amarillo 1998, no pet.),
issues not expressly presented to the trial court by written motion, answer, or other
response may not be considered on appeal as grounds for reversal of a summary
judgment. That being true, the question may not now be raised for the first time on appeal.

 The Fund next argues that PEIC "inexplicably" attached to its motion as an exhibit
an "incomplete and unexecuted contract" between Elliott and Gulf States Utilities
Company. It asserts that although the contract was incomplete and unexecuted, PEIC
never offered any affidavit or other evidence that the contract had ever actually been
executed by the parties or that Gulf States Utilities Company was the same entity as
Entergy. However, none of these objections were made before the trial court, nor were
they raised in the Fund's response to the motion. Appellant's response to the motion was
based upon the theory that "Byrd and Walters were statutory employees of Entergy
because their work was governed by federal statutes and regulations which deem them
to be employees of Entergy as a matter of law." Indeed, in the closing portion of its
response, the Fund argued that although "the existence of a contract is a factor to be
considered in determining who is the employer, . . . it is not controlling." It also reasoned
in its response, that if the evidence "shows that the right of control is different than that in
the contract, the issue becomes one for the fact finder to resolve [citation omitted]." Here,
the Fund asserts, "the summary judgment evidence clearly reflects that Entergy had the
right of control despite the terms of the contract." Moreover, in its conclusion to the
response, it opines that the parties could not "frustrate the federal regulations by
agreement and those federal regulations become a part of any contract between Entergy
and Elliott." Again, the Fund's appellate contentions with regard to the sufficiency of proof
of identity of the parties to the contract, or the lack of completeness of the contract exhibit,
were not raised at the trial level. Because of its failure to raise those questions before the
trial court, the Fund may not now raise them for the first time. Id. at 113. The Fund's third
issue is overruled.

 Reiterated, in its fourth issue, the Fund questions the sufficiency of PEIC's summary
judgment evidence to conclusively negate that Walters and Byrd were borrowed servants
of Entergy at the time of the accident. Parenthetically, the record shows that in a pretrial
joint motion for continuance, the parties stated that "the primary dispute in this case
involves a question of law." Because of the nature of this challenge, it is necessary to
review PEIC's summary judgment evidence (2) in some detail.

 As relevant here, subsection 18 of section 401.011 of the Texas Labor Code defines
an "employer" as a person who makes a contract of hire, employs one or more employees,
and has workers' compensation insurance. Tex. Lab. Code Ann. § 401.011(18) (Vernon
Supp. 2002). In the trial court, appellant did not argue that Entergy was the employer of
record of Walters and Byrd. Rather, it contended that at the time of their injuries, Walters
and Byrd were "borrowed servants" of Entergy and PEIC, as Entergy's workers'
compensation insurance carrier, was liable for their injuries. In Producers Chemical Co.
v. McKay, 366 S.W.2d 220 (Tex. 1963), the court explained the "borrowed servant"
doctrine as follows:

 Whether general employees of one employer have, in a given situation,
become special or borrowed employees of another employer is often a
difficult question, particularly when employees are furnished with machinery
by their general employer to accomplish part of a project or contract
undertaken by another. Solution of the question rests in right of control of
the manner in which the employees perform the services necessary to
accomplishment of their ultimate obligation. If the general employees of one
employer are placed under control of another employer in the manner of
performing their services, they become his special or borrowed employees. 
If the employees remain under control of their general employer in the
manner of performing their services, they remain employees of the general
employer and he is liable for the consequences of their negligence.


Id. at 225.


 The Fund argues that the contract governing the relations between Elliott and
Entergy contains "contradictory provisions concerning which entity, Entergy or Elliott,
would possess the right of control over work that might be performed in the future by Elliott
for the benefit of Entergy." The provisions to which the Fund refers are:

 SECTION 1. Contractor [Elliott] agrees to do and perform for Company
[Entergy] that work provided in a purchase order issued to Contractor in
connection herewith, said work to be done on the terms and conditions
expressed in such purchase order and in this Agreement . . . .


 SECTION 3. Unless otherwise provided in the purchase order, all materials
to be furnished by Contractor shall be of the finest quality available for the
use intended. All work to be done hereunder is to be performed and
completed in accordance with Company's standards, specifications and the
industry practices pertaining to similar work, and any specific provisions in
said purchase order, or in this Agreement, and shall be subject to inspection
from time to time by Company's representatives. Upon completion, said
work shall be subject to approval and acceptance by such Company's
representatives. However, all such inspection and approval shall be
concerned as to results only and not as to the method or manner of
performing said work.


 SECTION 4. Contractor shall employ and direct all persons performing any
work hereunder, and such persons shall be and remain the sole employees
of, and subject to the control and direction of, Contractor, and shall not be
the employees of, or subject to, the direction and control of Company, it
being the intention of the parties hereto that Contractor shall be and remain
an independent contractor, and nothing herein contained shall be construed
as inconsistent with that status. Contractor is to determine the manner and
method in which the work shall be performed, to conduct the work in the
name of the Contractor, and agrees to inform all persons employed by him/it
and working upon said undertaking that they are employed by and work for
said Contractor and that they are not employed by Company.


 We do not agree that the provisions are inconsistent. Section 1 merely provides
that the work to be done will be in accordance with the provisions of the purchase order
and attachments. It does not deal with the control and direction of the employees
performing the work. Section 3 refers to the work to be done and that it will be subject to
approval and acceptance. Even so, it closes with the express statement that the right of
inspection and approval is related to "results only" and not as to the method or manner that
work is performed.

 Neither of those sections is inconsistent with the rather clear dictates contained in
section 4 that the Contractor (Elliott) would employ and direct all persons performing any
work hereunder, that those persons would be subject to the control and direction of the
Contractor, and would not be the employees of the Company (Entergy) or subject to its
direction and control. In Castillo v. U. S. Fire Ins. Co., 953 S.W.2d 470 (Tex.App.--El Paso
1997, no writ), after referring to the Producers Chemical Co. explication of the borrowed
servant doctrine, the court observed further that when a contract between the employers
expressly provides that one or the other shall have right of control, that provision
determines who is the employer. Id. at 473. 

 However, in Exxon Corp. v. Perez, 842 S.W.2d 629 (Tex. 1992), the court iterated
a qualification upon that rule with the observation that if the contract was a mere sham or
cloak designed to conceal the true legal relationship between the parties, the contract
would not prevent the existence of a master-servant relationship. Id. at 630. Here, in
addition to the contractual provisions, the record shows that in response to Entergy's
request for admissions, the Fund admitted that Walters picked up his paycheck at Elliott, 
filled out an application at Elliott, that Entergy did not supervise Walters on the manner
and details of how he performed his forklift activities, that Walters's paychecks were issued
by Elliott, and that Elliott withheld social security and federal taxes for Walters. It also
admitted that Walters took Byrd's place after Byrd's accident, and Entergy did not provide
paychecks to Walters or Byrd. Additionally, it was admitted that Norris Simon, Elliott's
vice-president, wrote the Fund requesting the payment of Walters's and Byrd's workers'
compensation claims and, in those letters, stated that Walters and Byrd were employees
of Elliott. 

 In asserting that a fact question exists, the Fund points to evidence that Byrd's and
Walters's jobs were the same, that Walters reported to Entergy's premises for work each
day, that Walters received and completed paper work forms from Entergy each day, that
Entergy told Walters where to drive his truck and provided Walters with trucks and forklifts
for his use, and that Entergy reserved the right to prevent Walters and other drivers from
performing work.

 However, Entergy's traffic coordinator Keith Krechel testified that if there was a
particular employee they did not want to work for them, Entergy's right was actually to call
and advise Elliott of that fact. He also admitted that Entergy had no authority to actually
hire or fire truck drivers. The summary judgment evidence was that, although Entergy 
furnished the equipment used by employees such as Walters and Byrd, their training to
use the equipment came from Elliott. With regard to the paperwork, the evidence was that
those were bills of lading or delivery tickets which were given to the driver each morning
with instructions of where to go. The summary judgment evidence also showed that Elliott
was the entity which tested and certified the employees in the manner in which they would
load their deliveries. If there was a dispute about whose instructions to follow, those of
Elliott's would govern.

 Suffice it to say, there was no summary judgment evidence that would show the
contract was a mere sham or cloak to hide the real relationship between the parties. 
Appellant's fourth issue is overruled.

 In final summary, all of the Fund's issues are overruled and the judgment of the trial
court is affirmed. 


 John T. Boyd

 Senior Justice


Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 
2. The Fund did not submit any evidence with its response.